FILED - USDC -NH
2024 APR 17 PM 2:32

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **State of New Hampshire,** ) | |
| ) | |
| Complainant ) | |
| v. ) | No. _____ |
| ) | |
| **Destinie L. Berard** ) | |
| ) | |
| Defendant. ) | |

### NOTICE OF REMOVAL
### (JURY TRIAL DEMAND)

NOW COMES Defendant Destinie L. Berard, *pro se*, and hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1443 and 1445, and, in support thereof, states as follows:

1. On March 18, 2024, Defendant Berard was arraigned on a Class A misdemeanor in the New Hampshire 10th Circuit District Division Court, ~~Brentwood~~ Hampton, Case No. 441-2024-CR-00353.

2. Pursuant to the transcript of the arraignment hearing (*Tr. 4:12-21*):

```
12        THE COURT: Okay. All right. So what I'm going to
13   do now is I'm going to read the charge against you. It's a
14   Class A misdemeanor, a violation of a protective order. That
15   on May 30th, 2022, at 12:45 p.m., that you knowingly violated
16   a final order of protection issued by the 10th Circuit Court
17   Family Division in Brentwood on July 8, 2020. In that you
18   came within 300 feet of the protected party in said order at 1
19   Lowell Street, St. Elizabeth of Hungary Mission Church.
20        Do you wish to enter not guilty to this charge?
21        MS. BERARD: Yes, please.
```

- 1 -

3. The final order of protection was signed by Judge Polly L. Hall on July 8, 2020. Ms. Berard plead "not guilty."

4. The "protected party," Massachusetts Police Officer Patrick Szymkowski, who is employed by the Salisbury, Massachusetts Police Department, has an extensive record of police misconduct.

5. In 2012, a complaint on the improper use of force by Ofc. Szymkowski was <u>sustained</u> by an internal investigation by the Salisbury Police Department arising out of allegations Ofc. Szymkowski placed his hand on the neck of Mr. Bruce Brown and choked Mr. Brown during his arrest, resulting in injuries to Mr. Brown requiring medical treatment. Cf. <u>Commonwealth of Massachusetts v. Bruce Brown, No. 1222CR000988</u>, Newburyport District Court.

6. On April 13, 2017, Officer Gregory Levesque of the Georgetown Police Department in Massachusetts responded to allegations Ofc. Szymkowski was threatening the Defendant. At that time, Ofc. Levesque spoke with his Sergeant on Duty, Sergeant James Rodden.

7. On April 13, 2017, Sgt. Rodden advised Ofc. Levesque to provide various forms and pamphlets to the Defendant concerning the Defendant's options for obtaining a restraining order against Ofc. Szymkowski, and proceeded to tell her "that there are programs out there to assist her more in depth."

8. On May 23, 2018, Salisbury Police Department Chief Thomas Fowler ordered that Ofc. Szymkowski was to have no contact with the Defendant *because of Ofc. Syzmowki's prior conduct concerning the Defendant*, and was placed on paid administrative leave.

9. On May 24, 2018, a fact finding meeting was conducted between Chief Fowler and Ofc. Szymkowski in Chief Fowler's conference room. Chief Fowler concluded Ofc. Szymkowski violated the Department's Rules of Conduct Policy (DISC-1). Additionally, Ofc. Szymkowski violated the Department's Domestic Violence & Criminal Harassment Policy (VWA-2) for not reporting that he may have been the subject of a police investigation in Georgetown. **These charges were sustained and supported by sufficient evidence.**

10. On May 30, 2018, Chief Fowler received an email that that included three (3) Salisbury Police mug shots and a photo of evidence seized in a civil marijuana case. Cf. _Commonwealth of Massachusetts v. Anna Chikosi_, No. 1422CR002032, Newburyport District Court; _Commonwealth of Massachusetts v. Nicole Diane Skillin_, No. 1450CR002846, Malden District Court; _Commonwealth of Massachusetts v. Nicole Diane Skillin_, No. 1605CR000700, Boston Municipal Court, East Boston Division.

11. On May 30, 2018, believing that the Defendant allegedly might have sent this email <u>reporting official police misconduct</u> by Ofc. Szymkowski related to these various criminal cases (at ¶10) to the Salisbury Police Department, Ofc. Szymkowski then decided to retaliate against the Defendant by filing for a civil order of protection. See _Patrick Szymkowski v. Destinie Berard_, No. 618-2018-DV-00078, 10th Circuit – Family Division – Brentwood.

12. Pursuant to New Hampshire DV Protocol 5-15, "Allowing for a final hearing without issuing a temporary order of protection can lead to a potentially volatile situation. The plaintiff may be placed in danger if the defendant is served with notice of a hearing but no protection orders are in place. The judge shall encourage the plaintiff to contact the crisis center so that an advocate may assist the plaintiff with a safety plan. Staff shall also explain to the plaintiff that the petition may be withdrawn without prejudice. If the plaintiff withdraws the petition, the pleadings shall not be served, any orders issued shall be vacated, and the case shall be immediately closed."[1]

13. After Judge Mark Weaver did not issue any temporary orders in _Szymkowski v. Berard_, No. 618-2018-DV-00078, Ofc. Szymkowski immediately withdrew his petition that same day (May 30, 2018), and no notice of Ofc. Szymkowski's allegations were provided to Defendant at that time.

14. On June 6, 2018, Chief Fowler determined that the "disclosure of these photos (at ¶10) to a civilian who has no association with the Salisbury Police Department is a gross violation of department policy. Specifically, it violated the Department Code of Conduct and Responsibility Policy (DISC-1). More specifically, Section G. Public Statements, subsection 4. Dissemination of Official Information section a."

---

1   https://www.courts.nh.gov/sites/g/files/ehbemt471/files/documents/2021-06/c5.pdf

- 3 -

15. On June 6, 2018, Chief Fowler charged Ofc. Szymkowski with violating the abovementioned policies, and determined that **these charges were sustained and supported by sufficient evidence.**

16. Further, Chief Fowler further ordered that "As a result of these charges and in accordance to the resolution agreement dated May 30, 2018 you [Ofc. Szymkowski] are hereby suspended without pay from duty from Monday June 18, 2018 to Tuesday June 19, 2018. During this time you may not represent yourself or act as a police officer in any capacity and you will not be eligible for any overtime or detail work."

17. On June 13, 2018, Ofc. Szymkowski then decided to retaliate against the Defendant <u>again</u> by filing for another civil order of protection. See *Patrick Szymkowski v. Destinie Berard*, No. 618-2018-DV-00084, 10th Circuit – Family Division – Brentwood.

18. As the Fifth Circuit Court of Appeals recently observed in *United States v. Rahimi*, 61 F. 4th 443 (5th Cir 2023):

> "Many divorce lawyers routinely recommend pursuit of civil protection orders for clients in divorce proceedings . . . as a tactical leverage device." Jeannie Suk, *Criminal Law Comes Home*, 116 YALE L.J. 2, 62 n.257 (2006). *See also, e.g.*, Randy Frances Kandel, *Squabbling in the Shadows: What the Law Can Learn from the Way Divorcing Couples Use Protective Orders as Bargaining Chips in Domestic Spats and Child Custody Mediation*, 48 S.C. L. REV. 441, 448 (1997) (civil protective orders are deployed as "an affirmative element of divorce strategy").
>
> That's because civil protective orders can help a party in a divorce proceeding to "secure [favorable] rulings on critical issues such as [marital and child] support, exclusion from marital residence and property disposition." *Murray v. Murray*, 267 N.J.Super. 406, 631 A.2d 984, 986 (1993). Protective orders can also be "a powerful strategic tool in custody disputes." Suk, *supra*, at 62.
>
> That makes civil protective orders a tempting target for abuse. Judges have expressed "concern[ ] . . . with the serious policy implications of permitting allegations of . . . domestic violence" to be used in divorce proceedings. *Murray*, 631 A.2d at 986. *See also City of Seattle v. May*, 171 Wash.2d 847, 256 P.3d 1161, 1166 n.1 (2011) (Sanders, J.,

dissenting) (noting "the growing trend to use protection orders as tactical weapons in divorce cases"). And for good reason. "[N]ot all parties to divorce are above using [protective orders] not for their intended purpose but solely to gain advantage in a dissolution." *Scott A. Lerner, Sword or Shield? Combating Orders-of-Protection Abuse in Divorce*, 95 ILL. BAR J. 590, 591 (2007). Anyone who is "willing to commit perjury can spend months or even years . . . planning to file a domestic violence complaint at an opportune moment in order to gain the upper hand in a divorce proceeding." David N. Heleniak, *The New Star Chamber: The New Jersey Family Court and the Prevention of Domestic Violence Act*, 57 RUTGERS L. REV. 1009, 1014 (2005). So "[a] plaintiff willing to exaggerate past incidents or even commit perjury can have access to a responsive support group, a sympathetic court, and a litany of immediate relief." Peter Slocum, *Biting the D.V. Bullet: Are Domestic-Violence Restraining Orders Trampling on Second Amendment Rights?*, 40 SETON HALL L. REV. 639, 662-63 (2010).

Moreover, these concerns are exacerbated by the fact that judges are too often ill-equipped to prevent abuse. Family court judges may face enormous pressure to grant civil protective orders—and no incentive to deny them. For example, family court judges may receive mandatory training in which they're warned about "the unfavorable publicity" that could result if they deny requests for civil protective orders. *Id.* at 668. As one judge has noted, "[a] newspaper headline can be death to a municipal court judge's career." *Id.* at 667 n.213 (quotations omitted). So "the prospect of an unfavorable newspaper headline is a frightening one." *Id.* To quote another judge: "Your job is not to become concerned about all the constitutional rights of the [defendant] you're violating as you grant a restraining order. Throw him out on the street, give him the clothes on his back and tell him, 'See ya' around.'" *Id.* at 668. Yet another judge said: "If there is any doubt in your mind about what to do, you should issue the restraining order." *Id.*

As a result, "[r]estraining orders . . . are granted to virtually all who apply." May, 256 P.3d at 1166 n.1 (Sanders, J., dissenting) (quotations omitted). So there's a "tremendous" risk that courts will enter protective orders automatically—despite the absence of any real threat of danger. Heleniak, *supra*, at 1014. *See generally* Slocum, *supra*. In one case, for example, a family court judge granted a restraining order on the ground that the husband told his wife that he

- 5 -

did not love her and was no longer attracted to her. See *Murray*, 631 A.2d at 984. "There was no prior history of domestic violence," yet the judge issued the order anyway. *Id.* Another judge issued a restraining order against David Letterman on the ground that his presence on television harassed the plaintiff. See Todd Peterson, *David Letterman Fights Restraining Order*, PEOPLE (Dec. 21, 2005).

*Rahimi* at 465-66.

19. Defendant alleges that Judge Polly Hall's policy in <u>civil</u> restraining order cases is to ensure, regardless of who is the plaintiff and who is the defendant, or any other underlying facts of the case, that men are to remain armed, and women are to be disarmed, using New Hampshire's Domestic Violence Protocols under color of law to deprive litigants of fundamental constitutional rights in <u>civil</u> cases.

20. Defendant alleges Judge Polly Hall's July 8, 2020 *Order* in a <u>civil</u> case was intended to ensure a 4'10" woman, who resides in Massachusetts, was disarmed, while a 6'1" weapons carrying police officer found to have previously violated his Department's Domestic Violence & Criminal Harassment Policy (VWA-2) *arising from his prior conduct toward the Defendant*, remained armed:



21. On July 21, 2021, the Defendant's friend, Ms. Lindsay Smith, also sought a civil restraining order from Judge Polly Hall. See <u>Lindsay Smith v. Richard Lorman</u>, No. 641-2021-DV-00070.



(Photo from March 18, 2024 arraignment, *State v. Berard*, No. 441-2024-CR-00353)

22. On October 20, 2021, Judge Polly Hall denied a final order of protection for the Defendant's friend, Ms. Lindsay Smith.

23. Consistent with Judge Polly Hall's alleged policy in <u>civil</u> restraining order cases that women are to be disarmed and men are to remain armed, regardless of any underlying facts, defendant Richard Lorman was subsequently able to obtain firearms.

24. On November 15, 2021, Lindsay Smith was a victim of attempted murder by Richard Lorman.

25. On November 23, 2021, the New Hampshire Judicial Branch (NHJB) produced its *Report of the Internal Review Committee on the Case of Lindsay Smith v. Richard Lorman*, No. 641-2021-DV-00070.

26. On November 30, 2021, the NHJB issued a press release naming members of the *NHJB Domestic Violence Task Force*.

27. On December 9, 2021, the New Hampshire Supreme Court issued an *Order* establishing the *NHJB Domestic Violence Task Force*, arising from the <u>Smith v. Lorman</u> case.

28. The *NHJB Domestic Violence Task Force*, chaired by New Hampshire Supreme Court Justice Barbara Anna Hanz Marconi, then held 10 meetings on December 15, 2021; January 11, 2022; January 12, 2022; January 18, 2022; January 19, 2022; January 25, 2022; January 17, 2022; January 31, 2022; and February 22, 2022.

29. On March 8, 2022, Justice Marconi gave a "public briefing" on a PowerPoint presentation and report issued by the *NHJB Domestic Violence Task Force*.

30. On April 11, 2022, New Hampshire Governor Chris Sununu issued a press release and Executive Order 2022-3, establishing the *Governor's Commission on Domestic Violence, Sexual Assault and Stalking*.

31. On June 2, 2022, Governor Sununu issued a press release announcing the membership of the *Governor's Commission on Domestic Violence, Sexual Assault and Stalking*.

32. The *Governor's Commission on Domestic Violence, Sexual Assault and Stalking* has since held thirteen (13) meetings on June 23, 2022; August 25, 2022; September 22, 2022; October 27, 2022; November 17, 2022; January 6, 2023; March 3, 2023; May 5, 2023; June 2, 2023; September 15, 2023; November 17, 2023; and March 15, 2024.

33. The Defendant and Ms. Lindsay Smith are similarly situated individuals (both women) who have appeared before Judge Polly Hall in <u>civil</u> domestic violence proceedings.

34. The Defendant and Ms. Lindsay Smith both received orders from Judge Polly Hall in a <u>civil</u> proceeding ensuring that Ofc. Patrick Szymkowski and Richard Lorman (both men) have been afforded opportunities to possess firearms pursuant to the Second Amendment. *See, e.g.*, *New York State Rifle & Pistol Assn, Inc. v. Bruen*, 142 S.Ct. 2111 (2022).

35. Ofc. Patrick Szymkowski and Richard Lorman (both men) are alleged to have committed acts of domestic violence against the Defendant and Ms. Lindsay Smith (both women).

36. Defendant does <u>not</u> admit to any alleged violations of Judge Polly Hall's "order of protection" for Ofc. Patrick Szymkowski nor to any relevant alleged

facts, and reserves her Fifth Amendment Right not to testify concerning any such allegations.

37. Nevertheless, Defendant also wishes to raise an affirmative defense that New Hampshire's Domestic Violence Protocols violate the Equal Protection provisions of the Fourteenth Amendment, both *prima facie*, and *as-applied*.

38. Defendant also wishes to raise an affirmative defense that NH RSA 173-B violates the Equal Protection provisions of the Fourteenth Amendment, both *prima facie*, and *as-applied*.

39. Defendant also wishes to raise an affirmative defense that the orders, actions, and proceedings of the the *NHJB Domestic Violence Task Force* violate the Equal Protection provisions of the Fourteenth Amendment, both *prima facie*, and *as-applied*.

40. Defendant also wishes to raise an affirmative defense that some or all proceedings of the *Governor's Commission on Domestic Violence, Sexual Assault and Stalking* have violated the Equal Protection provisions of the Fourteenth Amendment, both *prima facie*, and *as-applied*.

41. Defendant further asserts that the previously described actions of Ofc. Szymkowski (who is a government official) were made with a retaliatory motive and that the Defendant has been injured; moreover, that Ofc. Szymkowski's motive was a "but-for" cause of the injury. *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019).

42. While the existence of probable cause generally defeats a claim of retaliatory arrest, the no-probable-cause requirement should not apply if there is objective evidence that a defendant was arrested when otherwise similarly situated individuals engaged in the same kind of protected First Amendment activity have not been. *Nieves* at 1719.

43. Defendant further asserts that New Hampshire does not provide Equal Protection for similarly situated litigants in civil domestic violence cases to engage in protected First Amendment activity. Cf. *Counterman v. Colorado*, 143 S. Ct. 2106 (2023); *Shannon Davies v. Nathan Bishop*, No. 2022-0114, (N.H. June 29, 2023).

44. Defendant further reserves the right to raise any other affirmative defense not explicitly enumerated. Defendant has filed this <u>Notice of Removal</u> *pro se*, without the assistance of counsel, and *pro se* pleadings "shall be so construed as to do substantial justice." <u>*Erickson v. Pardus*, 551 U.S. 89 (2007)</u>.

45. Defendant brings this removal claim under <u>28 U.S.C. § 1443(1)</u> because of her allegations previously set forth that New Hampshire state statutes and other relevant state judicial protocols have been applied before trial so as to deprive the accused of her equal civil rights. <u>*City of Greenwood v. Peacock*, 384 U.S. 808 (1966)</u>.

46. Defendant asserts that her affirmative defenses as previously set forth rely upon a "right under any law providing for . . . equal civil rights," namely, the Equal Protection provisions of the Fourteenth Amendment, and that such rights are "denied or cannot [be] enforce[d]" in the state courts of New Hampshire. <u>*Georgia v. Rachel*, 384 U.S. 780, 788-89</u>.

47. Defendant is timely removing this action within 30 days of her arraignment hearing.

48. Defendant will promptly give notice of this filing to John Ventura, Esq., counsel for the State of New Hampshire, and will file a copy of this *Notice of Removal* with the Clerk of 10th Circuit District Division Court, Hampton, New Hampshire.

49. Defendant reserves the right to amend or supplement this *Notice of Removal*.

50. Defendant demands a trial by jury pursuant to the Sixth Amendment.

WHEREFORE Defendant Destinie L. Berard respectfully requests that the criminal complaint against her be removed to the United States District Court for the District of New Hampshire.

Respectfully submitted,

*[signature: Destinie Berard]*

Destinie L. Berard
*Pro Se*
46 Pond St.
Georgetown, MA 01833

April 17, 2024.

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April, 2024, I will conventionally serve the foregoing on all counsel of record via first-class mail.

*[signature: Destinie Berard]*

Destinie L. Berard
978 518 0765

April 17, 2024