UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **State of New Hampshire,** )<br>)<br>**Complainant** )<br>v. )<br>)<br>**Destinie L. Berard** )<br>)<br>**Defendant.** ) | Cr. No. 1:24-cr-00038-JL-TSM |

**NOTICE OF APPEAL PURSUANT TO 28 U.S.C. § 1447(d)**

NOW COMES Defendant Destinie L. Berard, *pro se*, and states:

1. 28 U.S.C. § 1447(d) provides that "an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title <u>shall</u> [emphasis added] be reviewable by appeal or otherwise."

2. The underlying facts of this case concern multiple attempts by Massachusetts Police Officer Patrick Szymkowski, found to be a domestic violence abuser by the Commonwealth of Massachusetts, to incarcerate his victim, Massachusetts resident Ms. Destinie Berard.

3. It is the systematic policy of the State of New Hampshire, as implemented by all five New Hampshire State Supreme Court Justices and the Chief Administrative Judge of the New Hampshire Circuit Court, completely to ignore all established principles of law in "civil" domestic violence proceedings under N.H. Rev. Stat. Ann. § 173-B (2023).

4. In particular, Ms. Berard further asserts that N.H. Rev. Stat. Ann. § 173-B:9 (2023) **(**the statute under which she is criminally charged**)** is unconstitutional, both *prima facie*, and as-applied.

- 1 -

5. It can be clearly predicted by reason of the operation of pervasive and explicit New Hampshire state laws and policies that Ms. Berard's rights will inevitably be denied by the very act of bringing her to trial in state court. Indeed, N.H. Rev. Stat. Ann. § 173-B (2023) and N.H. Rev. Stat. Ann. § 173-B:9 (2023) are state statutes that purport to command the state courts to ignore federal rights. *People of State of California v. Sandoval*, 434 F.2d 635 (9th Cir. 1971).

6. N.H. Rev. Stat. Ann. § 173-B:9, I(a) (2023) is intended to be purely punitive in nature, rather than related to any legitimate government objective. *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520 (1979) observing that "punitive measures may not constitutionally be imposed prior to a determination of guilt." *Bell* at 537.

7. Consequently, it is New Hampshire's systematic statewide policy to incarcerate <u>victims</u> of domestic violence <u>in preventative detention</u>, *potentially indefinitely*, and <u>without any access to effective counsel</u>, in such cases where their abusers falsely represent to New Hampshire that they are somehow "victims."

8. In particular, New Hampshire state statutes, as well as New Hampshire's Domestic Violence Protocols,[1] purport to command New Hampshire completely to ignore all historically established principles of law, in favor of <u>systematically</u> implementing the "star chamber" trials described by the Fifth Circuit in *United States v. Rahimi*, 61 F. 4th 443, 465-66 (5th Cir. 2023).

9. Separate and apart from any Second Amendment issue, the Fifth Circuit observed in *Rahimi* that:

> "Many divorce lawyers routinely recommend pursuit of civil protection orders for clients in divorce proceedings . . . as a tactical leverage device." Jeannie Suk, *Criminal Law Comes Home*, 116 YALE L.J. 2, 62 n.257 (2006). See also, e.g., Randy Frances Kandel, *Squabbling in the Shadows: What the Law Can Learn from the Way Divorcing Couples Use Protective Orders as Bargaining Chips in Domestic Spats and Child Custody Mediation*, 48 S.C. L. REV. 441, 448 (1997) (civil protective

---

1  Available online at: https://www.courts.nh.gov/our-courts/circuit-court/district-division/protocols/domestic-violence-protocols

orders are deployed as "an affirmative element of divorce strategy").

That's because civil protective orders can help a party in a divorce proceeding to "secure [favorable] rulings on critical issues such as [marital and child] support, exclusion from marital residence and property disposition." *Murray v. Murray*, 267 N.J.Super. 406, 631 A.2d 984, 986 (1993). Protective orders can also be "a powerful strategic tool in custody disputes." Suk, *supra*, at 62.

That makes civil protective orders a tempting target for abuse. Judges have expressed "concern[ ] . . . with the serious policy implications of permitting allegations of . . . domestic violence" to be used in divorce proceedings. *Murray*, 631 A.2d at 986. *See also City of Seattle v. May*, 171 Wash.2d 847, 256 P.3d 1161, 1166 n.1 (2011) (Sanders, J., dissenting) (noting "the growing trend to use protection orders as tactical weapons in divorce cases"). And for good reason. "[N]ot all parties to divorce are above using [protective orders] not for their intended purpose but solely to gain advantage in a dissolution." Scott A. Lerner, *Sword or Shield? Combating Orders-of-Protection Abuse in Divorce*, 95 ILL. BAR J. 590, 591 (2007). Anyone who is "willing to commit perjury can spend months or even years . . . planning to file a domestic violence complaint at an opportune moment in order to gain the upper hand in a divorce proceeding." David N. Heleniak, *The New Star Chamber: The New Jersey Family Court and the Prevention of Domestic Violence Act*, 57 RUTGERS L. REV. 1009, 1014 (2005). So "[a] plaintiff willing to exaggerate past incidents or even commit perjury can have access to a responsive support group, a sympathetic court, and a litany of immediate relief." Peter Slocum, *Biting the D.V. Bullet: Are Domestic-Violence Restraining Orders Trampling on Second Amendment Rights?*, 40 SETON HALL L. REV. 639, 662-63 (2010).

Moreover, these concerns are exacerbated by the fact that judges are too often ill-equipped to prevent abuse. Family court judges may face enormous pressure to grant civil protective orders—and no incentive to deny them. For example, family court judges may receive mandatory training in which they're warned about "the unfavorable publicity" that could result if they deny requests for

civil protective orders. *Id.* at 668. As one judge has noted, "[a] newspaper headline can be death to a municipal court judge's career." *Id.* at 667 n.213 (quotations omitted). So "the prospect of an unfavorable newspaper headline is a frightening one." *Id.* To quote another judge: "Your job is not to become concerned about all the constitutional rights of the [defendant] you're violating as you grant a restraining order. Throw him out on the street, give him the clothes on his back and tell him, 'See ya' around.'" *Id.* at 668. Yet another judge said: "If there is any doubt in your mind about what to do, you should issue the restraining order." *Id.*

As a result, "[r]estraining orders . . . are granted to virtually all who apply." *May,* 256 P.3d at 1166 n.1 (Sanders, J., dissenting) (quotations omitted). So there's a "tremendous" risk that courts will enter protective orders automatically—despite the absence of any real threat of danger. Heleniak, *supra*, at 1014. *See generally* Slocum, *supra*. In one case, for example, a family court judge granted a restraining order on the ground that the husband told his wife that he did not love her and was no longer attracted to her. *See Murray*, 631 A.2d at 984. "There was no prior history of domestic violence," yet the judge issued the order anyway. *Id.* Another judge issued a restraining order against David Letterman on the ground that his presence on television harassed the plaintiff. *See* Todd Peterson, *David Letterman Fights Restraining Order*, PEOPLE (Dec. 21, 2005).

10. While the Fifth Circuit's *Opinion* was subsequently reviewed by the United States Supreme Court, the U.S. Supreme Court strictly confined its analysis solely to analyzing the *prima facie* constitutionality of U.S.C. § 922(g)(8).

11. As the U.S. Supreme Court stated in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), "Our analysis starts and stops with Section 922(g)(8)(C)(i)…." *Rahimi* at 1898. The U.S. Supreme Court further explicitly stated that "in any event, we need not address any due process concern here because this challenge was not litigated as a due process challenge and there is no such claim before us." *Rahimi* at 1947 n.2.

12. Consequently, there now exists – at this time – a federal circuit split between the Fifth Circuit, where the due process concerns articulated in *Rahimi*, 61 F.

4th 443, (5th Cir. 2023) remain binding authority, and the First Circuit, where the New Hampshire Supreme Court has recently decided that *Rahimi*, 61 F. 4th 443 ought to be *explicitly* rejected.

13. Ms. Berard respectfully requests for the First Circuit to take judicial notice of:

    - *State of New Hampshire v. Anthony Kinney*, No. 2023-0169, slip op. (N.H. Sept. 6, 2024).

    - *State of New Hampshire v. Christine Berlind*, No. 464-2017-CR-00430.

14. In *State v. Kinney*, the New Hampshire Supreme Court has recently affirmed that *Rahimi*, 61 F. 4th 443 ought to be explicitly rejected.

15. The New Hampshire Supreme Court further recently affirmed that Mr. Kinney (another domestic violence victim) ought to have been incarcerated for over 60 days in preventative detention; and, *even after Mr. Kinney's release*, that Mr. Kinney would have been required *to be indefinitely re-incarcerated in preventative detention* if Mr. Kinney wished to assert any right to a jury trial.

16. In *State v. Kinney*, the New Hampshire Supreme Court has also *explicitly rejected* that "ineffective assistance of counsel" may be raised as a defense on appeal, despite that:

    - Mr. Kinney explicitly stated at the start of his bench trial that "Your Honor, I believe I'm getting inappropriate and ineffective representation in this case through the Public Defender's Office through this court." (*Tr. 6:6-8*).

    - Mr. Kinney explicitly attempted to waive his Fifth Amendment rights at the end of his bench trial by stating "Your Honor, I believe I have the constitutional right to be heard in this court as well as my attorney" and was explicitly denied the right to speak in his own defense. (*Tr. 34:19-21*).

17. Consequently, since at least September 6, 2024 it is now New Hampshire's present statewide policy that a criminal defendant may not raise "ineffective assistance of counsel" – at all – as a defense on appeal in criminal proceedings under N.H. Rev. Stat. Ann. § 173-B:9 (2023).

18. *State v. Kinney*'s explicit rejection of [Strickland v. Washington, 466 U.S. 668 (1984)](#), though likely <u>only</u> under state proceedings involving [N.H. Rev. Stat. Ann. § 173-B (2023)](#), further demonstrates that it can be clearly predicted by reason of the operation of pervasive and explicit New Hampshire state laws and policies that Ms. Berard's rights will inevitably be denied by the very act of bringing her to trial in a New Hampshire state court.

19. However, *unlike* <u>State v. Kinney</u>, this matter involves adversarial proceedings between the Salisbury Police Department (located in the Commonwealth of Massachusetts), and Ms. Berard (a resident of the Commonwealth of Massachusetts).

20. <u>Prior to</u> the commencement of any New Hampshire proceeding, the Commonwealth of Massachusetts *already reached* the conclusion that Ms. Berard was a domestic violence survivor of Massachusetts Police Officer Patrick Szymkowski.

21. However, because the Salisbury Police Department knew that New Hampshire would completely disregard (and *continues* to disregard) all findings previously made by the Commonwealth, the Salisbury Police Department then "sought refuge" in New Hampshire, by beginning its <u>original</u> adversarial proceedings against Ms. Berard.

22. By <u>private</u> correspondence to Ofc. Szymkowski dated May 30, 2018, Salisbury Police Chief Thomas Fowler informed Ofc. Szymkowski that "I have concluded that you have violated the Department's Rules of Conduct Policy (DISC-1). Additionally, you violated the Department's Domestic Violence & Criminal Harassment Policy (VWA-2) for not reporting that you may have been subject of a police investigation in Georgetown. **These charges have been sustained and supported by sufficient evidence.**" (emphasis in original).

23. However, Ms. Berard at that time was completely unaware of Chief Fowler's private correspondence describing how Ofc. Szymkowski had abused her, and even unaware of the Salisbury Police Department's *initial* New Hampshire action, <u>Szymkowski v. Berard, No. 618-2078-DV-00078 (N.H. Cir. Ct. Fam. Div. Brentwood)</u>, filed on May 30, 2018.

24. This initial New Hampshire action by Massachusetts police was intended <u>to protect the job security</u> of <u>an employee of the Commonwealth</u>. However, as a result of New Hampshire's systematic statewide policies to ensure "star chamber" trials, Ms. Berard was *deliberately* never noticed of <u>Szymkowski v. Berard</u>, No. 618-2078-DV-00073 (N.H. Cir. Ct. Fam. Div. Brentwood), filed on May 30, 2018.

25. In any event, because this was an adversarial proceeding between Ms. Berard and Massachusetts police, Ms. Berard's Sixth Amendment "right to counsel" ought to have attached on May 30, 2018.

26. The Sixth Amendment's "right to counsel" attaches when adversarial proceedings begin. [Montejo v. Louisiana, 556 U.S. 778, 790 (2009)](#).

27. However, because Ms. Berard has <u>never</u> been afforded *any* effective assistance of counsel in this matter, she has never been able *effectively* to challenge her ongoing harassment by the Salisbury Police Department that is located in the Commonwealth of Massachusetts.

28. Specifically, Massachusetts police have used New Hampshire's systematic and statewide application of "star chamber" trials under [N.H. Rev. Stat. Ann. § 173-B (2023)](#) to obtain a "gag order" that prevents Ms. Berard from publicly disclosing official police misconduct committed by the Salisbury Police Department in the Commonwealth, in violation of her First Amendment rights.

29. More recently, it has also been the systematic and statewide policy of New Hampshire, as implemented by the current Chief Administrative Judge of the New Hampshire Circuit Court (Hon. Ellen V. Christo), that a federal court cannot, under *any* circumstances, exercise jurisdiction over *any* kind of state court proceeding held under under [N.H. Rev. Stat. Ann. § 173-B (2023)](#).

30. Indeed, it is even the systematic policy of the Chief Administrative Circuit Court Judge that <u>it is the responsibility of the state court system</u>, and *not* the federal court system, to decide whether federal removal is proper.

31. On May 29, 2024, Chief Circuit Court Administrative Judge Christo <u>took it upon herself</u> to decide, *and against Ms. Berard*, whether this proceeding

could be removed to a federal court, completely disregarding that the federal district court had any authority whatsoever to decide the matter.

32. It is also the systematic and statewide policy of New Hampshire, as implemented by both its former[2] and current[3] Chief Circuit Court Administrative Judges, *further to subject domestic violence victims*, such as Ms. Berard, to additional "star chamber" proceedings[4] wherein, *inter alia*:

- Former federal prosecutors (e.g., Mr. Scott W. Murray) who are not New Hampshire judges under Articles 73 and 78 of the New Hampshire State Constitution[5] are assigned by the Chief Circuit Court Administrative Judge to act as "prosecutor, judge, jury, and executioner" in matters involving N.H. Rev. Stat. Ann. § 173-B (2023).

- The "judicial officers" in such "star chamber" proceedings completely disregard defendants' Fifth Amendment right to remain silent, in favor of conducting live depositions of the defendants.

- The "judicial officers" in such "star chamber" proceedings completely disregard defendants' "right to counsel" under the Fifth, Sixth, and Fourteenth Amendments, also forcing the defendants to represent themselves.

33. It is also the systematic and statewide policy of New Hampshire, as recently articulated by New Hampshire Circuit Court Judge John Pendleton, that criminal defendants in the "star chamber" proceedings held under N.H. Rev. Stat. Ann. § 173-B (2023) are required to complete highly specific, and very arcane forms promulgated by the State of New Hampshire that require indigent criminal defendants to sign statements under penalty of perjury prior to being allowed access to *any* assistance of counsel, let alone *effective* assistance.

---

2   The Hon. David D. King.
3   The Hon. Ellen V. Christo.
4   This Court may refer to the transcript of the July 24, 2024 state court hearing.
5   Cf. *Witte v. Justices of N.H. Superior Ct.*, 831 F.2d 362 (1st Cir. 1987) wherein "[Marital] Masters have no inherent power, but rather derive all their power from the appointing judge or from the agreement of the parties." *Witte* at 363.

34. At heart, the present criminal prosecution *originally* concerns an adversarial proceeding between Ms. Berard, a domestic violence victim who is a resident of the Commonwealth of Massachusetts, and her abuser, Massachusetts Police Officer Patrick Szymkowski.

35. Up to the present time, the State of New Hampshire has already incarcerated Ms. Berard in preventative detention for three days in furtherance of Ofc. Szymkowski's abuse, yet <u>has never provided Ms. Berard with the assistance of any attorney</u>.

36. For the foregoing reasons, this only further demonstrates that it can be clearly predicted by reason of the operation of pervasive and explicit New Hampshire state laws and policies that Ms. Berard's rights *will* (and already have!) inevitably be denied by the very act of bringing her to trial in a New Hampshire state court.

37. The present federal circuit split concerning *[Rahimi](), 61 F. 4th 443* now results in the disparate treatment of both domestic violence victims and criminal defendants in those states located in the Fifth Circuit (Louisiana, Mississippi, and Texas) as opposed to those states and territories located in the First Circuit (Maine, Massachusetts, New Hampshire, Rhode Island, and Puerto Rico).

38. This present disparate treatment of domestic violence victims and criminal defendants, depending on the federal circuit in which they reside, violates both the Due Process and Equal Protection requirements of the Fourteenth Amendment.

39. For the foregoing reasons, federal removal is warranted.

40. Because this criminal prosecution *originally* concerns an adversarial proceeding between Ms. Berard, a domestic violence victim who is *a resident of the Commonwealth of Massachusetts*, and Salisbury police, *who are also located in the Commonwealth of Massachusetts*, the appropriate jurisdiction is either a Massachusetts state court (which has *already* <u>decided</u> the underlying matter by dismissing *the same* allegations against Ms. Berard that

Ofc. Szymkowski has *now* brought back to New Hampshire),[6] or the United States District Court for the District of Massachusetts.

41. Ms. Berard has (and *has* had!) a Sixth Amendment "right to counsel" since adversarial proceedings began, even if this right has been ignored. *Montejo v. Louisiana*, 556 U.S. 778, 790 (2009).

42. Ms. Berard has (and *has* had!) a Fifth Amendment "right to counsel" ever since she invoked this right, even if this right has been ignored. *Edwards v. Arizona*, 451 U.S. 477, 485 (1981).

43. Under the Fourteenth Amendment, Ms. Berard has (and *has* had!) a right to effective assistance of counsel, even if this right has been ignored. *Strickland v. Washington*, 466 U.S. 668 (1984).

44. At the present time, Ms. Berard asserts (or re-asserts) her right to effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments.

45. Ms. Berard further requests that she now be provided assistance from the Federal Public Defender's office.

46. Finally, because this pleading has been prepared without the assistance of any professional counsel and submitted *pro se*, it should also be construed so "as to do substantial justice." *Erickson v. Pardus*, 551 U.S. 89 (2007).

Respectfully submitted,

/s/ *Destinie Berard*

_____
DESTINIE BERARD
   *Pro Se*
46 Pond St.
Georgetown, MA 01833
dlb12179@gmail.com

October 11, 2024.

---

6   *See, e.g.*, the prior state court proceedings held in the Commonwealth of Massachusetts on July 29, 2022 before Massachusetts Clerk Magistrate Kerrin M. Costello (No. 2222AC000713-HR) in the Newburyport District Court of Massachusetts, and on September 28, 2022 in the Peabody District Court of Massachusetts before Massachusetts Clerk Magistrate Kevin Finnegan (No. 2286AC000493-) arising out of Newburyport Police Incident Report #22-77-AR.